**W. R. GRASLE COMPANY and Employers Insurance of Wausau, Appellants,**

v.

**ALASKA WORKMEN'S COMPENSATION BOARD and Wenzel Joseph Raith, Appellees.**

No. 1950.

Supreme Court of Alaska.

Jan. 7, 1974.

Dennis E. Cook, of Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellants.

O. Nelson Parrish, Fairbanks, for appellee Raith.

William L. Christian, Asst. Atty. Gen., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellee Alaska Workmen's Compensation Bd.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

We here dispose of issues concerning the limitation of actions imposed upon claims for workmen's compensation.[1]

On June 24, 1965, Wenzel Joseph Raith stepped on a corner of a defective grille and fell 14 feet onto frozen ground, the grille landing upon him. He was treated near the scene of the accident in Barrow by a doctor who transferred him to Fairbanks. There he was cared for by Dr. Paul B. Haggland for approximately eight weeks. Both doctors diagnosed Raith's most serious injury as multiple rib fractures. The Barrow doctor diagnosed muscle bruises to the left shoulder, and Dr. Haggland diagnosed "strain neck." Both doctors represented to Raith and to the compensation carrier that no permanent disabilities would ensue from the injury. Appellant Employers Insurance of Wausau paid Raith eight weeks and two days temporary total disability compensation at a rate of $100 per week.

Thereafter, Raith obtained employment on the Dew Line. He immediately noticed extreme difficulty in use of his left shoulder; he was forced to use only the right arm in climbing scaffolds. Upon returning to Dr. Haggland, Raith was found to have a shoulder separation; subsequently he resumed work in Barrow. He testified that he was unable to work up to his own standards and added:

I stayed up there two years and it was more or less my convalescent home, I would say, which is one reason why during the period I was in Barrow I was not able to come to a hospital and com-

---

1. AS 23.30.105(a).

plain, but I can tell the Board that for three years after the accident I couldn't sleep on my stomach or my left side.

Subsequent to the treatment in 1965 Raith experienced the following difficulties: left knee which would "go out of joint" and "lock up" fairly frequently, occasionally on scaffolds; upper back and neck which caused constant pain and "knots up" in a manner prohibiting ordinary body rotation; weakness in left shoulder; loss of sensation in left arm associated with back pain.

Raith worked in the Fairbanks area from August, 1967, until the date of the Alaska Workmen's Compensation Board hearing. The various complaints never prevented Raith from finding employment in his usual trade as a journeyman electrician. Nor has Raith ever suffered reduced compensation as a result of his diminished ability to handle heavier tasks. However in May, 1971, Raith lost four consecutive days of work as a result of the condition of his upper back and neck.

On August 4, 1971, Raith saw Dr. Erwin Lindig, Jr., in Fairbanks, who diagnosed his condition as "degenerative changes of cervical spine, chronic muscular strain syndrome, left scapular area, internal derangement of left knee, and degenerative changes and deformity of left acromioclavicular joint" (the junction of the collar bone and the shoulder blade).

On May 6, 1972, Dr. Lindig suggested Raith may need surgery upon both the left knee and the left acromioclavicular joint. Dr. Lindig estimated the following disability figures: cervical spine, 20%; left scapular area, 10%; left knee, 20%; left shoulder, 10%.

Raith filed with the Alaska Workmen's Compensation Board a claim for permanent partial disability in August, 1971, shortly after he first saw Dr. Lindig. On May 10, 1972, the Board held a hearing upon that claim in Fairbanks. Appellants were represented by counsel at that hearing, and they raised two statute of limitation issues. No other objection to Raith's claim was raised.

The Board issued findings of fact and conclusions of law in favor of Raith, and appellants sought relief against the Board's order by filing a complaint in the Superior Court, Fourth Judicial District. The operative allegations of the complaint charged that the Board failed to make findings of fact sufficient to support the order and erred in interpreting AS 23.30.-105(a). Raith contends that the decision was based on a finding that he suffered from a latent defect. The only issues being legal, appellants moved the court to grant summary judgment in their favor. Judge Taylor held that the Board properly found Raith's injury to be latent and entered summary judgment for appellees, Raith and the Board. This appeal followed.

We must decide how the confusing limitation of actions section, AS 23.30.105, applies to Raith's claim, and whether the Board made a supportable finding that the claim was timely filed under the "latent defects" provision of the statute.

AS 23.30.105(a) contains three sentences of potential applicability to claims for physical injury.[2] The first establishes a two-year limitation commencing when "the employee has knowledge of the nature of

2. AS 23.105(a) provides in full:

The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of his disability and its relation to his employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefore is filed within one year after the death, except that if payment of compensa-

tion has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. Is is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

The final sentence respecting latent defects was added by amendment, § 6 ch. 42 S.L.A. 1962. See Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 538 n. 2 (Alaska 1966).

his disability and its relation to his employment and after disablement." Previously we concluded that "knowledge" imports also chargeable knowledge.[3] The second sentence purports to establish a four-year maximum limitation commencing upon "injury". Prior to a 1962 amendment the statutory structure was simple: claims became time-barred upon the first to occur of the passage of four years from "injury" or two years from the date that the employee had knowledge of the disability and its relationship to employment.

■ We come now to the 1962 amendment, which provided that full right to claim should exist, "time limitations notwithstanding", where the disability is caused by "latent defects". A key to interpretation of the provision is the construction of the term "latent defects". Latent "injury" rather than "defects" certainly will be found more frequently in workmen's compensation discussions. It appears clear to us, however, that by "defect" the legislature intended "injury". The term "latent injury" has a generally accepted meaning, and we hold in accordance therewith that an injury is latent so long as the claimant does not know, and in the exercise of reasonable diligence (taking into account his education, intelligence and experience)[4] would not have come to know, the nature of his disability and its relation to his employment.[5] This test is identical to the one set forth in the first sentence of AS 23.30.105(a) which determines the commencement date of the two-year statute.[6]

■■ Although we have attempted to give meaning to every provision of the amended statute, we find no time frame in which the four-year statute may operate subsequent to the amendment. A disability which becomes apparent immediately upon the occurrence of some mishap will be more quickly barred by the two-year limitation; a disability which does not fall within the actual or chargeable knowledge of the claimant until four years have passed must be treated as a latent defect for which the four-year period is waived by the 1962 amendment. Only where the claimant acquires knowledge of the nature of his disability and its relation to his employment more than two years but less than four years from the date of "injury" could the four-year period apply, but we would find a result allowing a two-year filing period to an applicant who acquired knowledge four or more years after the mishap and a shorter period to an applicant who acquired knowledge in more than two but less than four years incongruent with the liberal purposes motivating the latency amendment. We therefore conclude that the effect of the 1962 amendment was to repeal the four-year statute contained in the second sentence of AS 23.30.105(a).[7] Accordingly, we need not consider whether the Board applied the four-year statute to Raith's claim.

The congruency of the tests applied to the remaining effective provisions of AS 23.30.105(a) and the injunction to give intelligent effect to as much of a single en-

3. Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 540 (Alaska 1966).

4. Consolidated Underwriters v. Pittman, 388 S.W.2d 315, 317 (Tex.Civ.App.1964).

5. Stancil v. Massey, 141 U.S.App.D.C. 120, 436 F.2d 274, 277 (1970); Griffin v. Rustless Iron & Steel Co., 187 Md. 524, 51 A. D.2d 280, 284, 288 (1947); Potter v. Midland Cooperative, 248 Minn. 380, 80 N.W.2d 59, 61 (1956); Williams v. S. N. Long Warehouse Co., 426 S.W.2d 725, 732 (Mo.App. 1968); Crites v. Missouri Dry Dock and Repair Co., 348 S.W.2d 621, 624 (Mo.App. 1961); Brown v. Safeway Stores, Inc., 82 N.M. 424, 483 P.2d 305, 307 (1970). *See*

City of Boulder v. Payne, 162 Colo. 345, 426 P.2d 194, 197 (1967); Rinne v. W. C. Griffis Co., 234 Minn. 146, 47 N.W.2d 872, 877 (1951); Tabor Motor Co. v. Garrard, 233 So.2d 811, 815 (Miss.1970); Williams v. Dobberstein, 182 Neb. 862, 157 N.W.2d 776, 778 (1968); Boyle v. Industrial Commission, 8 Wis.2d 601, 99 N.W.2d 702, 704 (1959).

6. Morrison-Knudsen Co. v. Vereen, 414 P. 2d 536, 541 (Alaska 1966).

7. "Those provisions of the original act which are in irreconcilable conflict with the provisions of the amendatory act are impliedly repealed." 1A Sutherland, Statutory Construction § 22.32 at 186 (4th ed. Sands 1972).

actment as possible [8] do lead us to conclude that the 1962 amendment did not repeal the first sentence of the statute. Thus, a claim for any disability must be filed within two years of actual or chargeable knowledge of the nature of the disability and its relation to employment.

We decline to speculate upon the issue of the proper commencement date of the four-year statute of limitations despite forceful argument by the parties, because the interpretation of a nugatory provision would serve no useful purpose. We turn, therefore, to the proper application of the "latent defects" provision to the action of the Board upon Raith's claim.

## THE ADEQUACY OF THE BOARD'S FINDINGS

█ Appellants charge that the Board did not find Raith's injury to be latent. The superior court concluded that the Board had so found. The adequacy of findings of fact and conclusions of law presents an issue of law to which we give fresh consideration on appeal.[9]

The Board made the following findings of fact:

> We find that the applicant did not have knowledge that he was suffering permanent partial disability until he saw Dr. Edwin Lindig in August 1971. Before that time, in 1965, both Dr. Miller and Dr. Haggland had reported that he would not have permanent defect. . . . His work in Barrow, where limited medical evaluation was available, was not such that he had to go all out and he was able to work without loss in earning capacity.

We find that in 1971 when his condition did cause him to lose some days from work . . . he did report to a doctor and did visit an attorney with regard to filing a claim. . . . Prior to 1971 the applicant had little reason to file a claim—his doctors believed his condition and complaints not permanent, and he was able to continue work.

Upon the statute of limitations issue the Board made the following conclusion of law:

> Physicians treating the applicant in 1965 believed no permanent defect would result from the severe injuries to his chest and shoulders; and because the applicant believed his condition continued to improve over the next few years and because his earnings were not diminished, the applicant had no reason to file a claim for permanent partial disability compensation. It was not until 1971 when he began missing work because of the continuing residuals of the 1965 accident and after Dr. Lindig advised him he had permanent partial disability that the applicant had knowledge he was experiencing one of the four categories of compensable disability—that of permanent partial disability. We conclude that the applicant acquired knowledge of the nature of his disability and its relationship to his employment after his 1971 disablement and that his claim heard on May 10, 1972 was made within the time limitations of AS 23.30.105(a).

█ The appellant's second contention before the Board, not maintained on appeal, was that AS 23.30.095(a) [10] barred payment of Raith's medical expenses. Be-

8. State v. American Can Co., 362 P.2d 291, 297 (Alaska 1961).

9. Hewing v. Alaska Workmen's Compensation Board, 512 P.2d 896, 898 (Alaska 1973); Manthey v. Collier, 367 P.2d 884, 889 (Alaska 1962).

10. AS 23.30.095(a) provides in part:
The employer shall furnish medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutch-

es, and apparatus for the for the period which the nature of the injury or the process of recovery requires, not exceeding two years from and after the date of injury to the employee. However, if the condition requiring the treatment, apparatus, or medicine is a latent one, the two-year period runs from the time the employee has knowledge of the nature of his disability and its relationship to his employment and after-disablement.

cause the limitation of AS 23.30.095(a) contains a latency exception parallel to AS 23.30.105(a), findings with respect to the former statute are relevant in interpreting findings respecting the latter. The allowance of Raith's expense claim inferentially finds latency, and the Board's language reveals an understanding that Raith suffered latent injury:

> In this case the applicant had need for treatment for a few months following injury and then was able to work until 1971 when his condition because of the nature of the 1965 injury, began to cause disability. His physician found considerable changes from the 1965 injury. . . . Sec. 095, if interpreted according to the defendant, would preclude any medical care for an injury causing a *latent* defect. . . . We conclude that the applicant is not barred by Sec. 095 from further medical care. [emphasis added].

■ Although the Board could have framed an order more conclusively disposing of the issues, we conclude that the above language sufficiently conveys the meaning of the Board's order and reveals the process of reasoning through which the result was formed to "permit us to intelligently review the . . . assertions advanced by appellant."[11]

We agree with the superior court that the Board found that Raith neither knew of nor should be charged with knowledge of the nature of his disability or its relation to his employment until some time in 1971.

## THE PROPRIETY OF THE BOARD'S FINDINGS

■ Having determined that the Board found Raith's injuries to be latent under a proper legal test, our assessment of the rectitude of the order "is limited to a determination of whether the Board's findings are supported by substantial evidence in light of the record as a whole."[12] Thus cases cited to us in which other courts have upheld decisions of trial courts or administrative bodies that injuries were not latent are unpersuasive, since the appellate court might very well have upheld a contrary decision by the trial court if there were substantial evidence supporting either side of the issue.[13] The few cases where appellate courts have found non-latency as a matter of law reveal that claimants suffered injuries which caused continuous substantial interference with work or personal lives.[14]

■ We have previously held that a layman "should not be expected to diagnose a condition which physicians whom he had consulted . . . failed to diagnose."[15] The Board found that Raith, acting upon the apparently reasonable advice of his physician, believed his difficulties to be minor and transitory until he was forced to miss work in 1971, and that whatever difficulties he experienced before 1971 caused no interference with his ability to obtain and hold employment for full wages at his ordinary occupation.[16] Appellants' contention that the mere presence of pain or annoyance associated with the area of the body which suffered the origi-

11. Hewing v. Alaska Workmen's Compensation Board, 512 P.2d 896, 898 (Alaska 1973).

12. Anchorage Roofing Co. v. Gonzales, 507 P.2d 501, 503 (Alaska 1973) (footnote omitted) and cases cited *Id.* n. 5.

13. Bowers v. Wayne Lovelady Dodge, Inc., 80 N.M. 475, 457 P.2d 994, 995 (1969); Pittman v. City Stores, Inc., 204 Tenn. 650, 325 S.W.2d 249, 253 (1959); Williams v. S. N. Long Warehouse Co., 426 S.W.2d 725, 734–735 (Mo.App.1968); Rinne v. W. C. Griffis Co., 234 Minn. 146, 47 N.W.2d 872 (1951).

14. Mathes v. Blue Ridge Glass Corp., 206 Tenn. 19, 330 S.W.2d 342 (1959); Copinjon v. Aetna Casualty & Surety Co., 242 S.W. 2d 219, 220 (Tex.Civ.App.1951).

15. Employers' Liability Assurance Corp. v. Bradshaw, 417 P.2d 600, 601 (Alaska 1966); *see* Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 540–541 (Alaska 1966); Borowski v. Armco Steel Corp., 188 Neb. 654, 198 N.W. 2d 460, 462 (1972).

16. *See, e. g.*, Borowski v. Armco Steel Corp., 188 Neb. 654, 198 N.W.2d 460, 462 (1972); Williams v. Dobberstein, 182 Neb. 862, 157 N.W.2d 776, 779 (1968).

nal impact makes an injury non-latent as a matter of law cannot be supported in the law of this or any other jurisdiction.[17]

Because the injuries properly were found to be latent the Board had the power to determine that Raith had full right to make his claim notwithstanding the four-year limitation of actions. The claim was filed within two years of the time it became discoverable to Raith; no further challenge to the propriety of the Board's order exists. The judgment of the superior court sustaining the order of the Alaska Workmen's Compensation Board is therefore affirmed.

Affirmed.

17. Employers' Liability Assurance Corp. v. Bradshaw, 417 P.2d 600, 601–602 (Alaska 1966). "It is unreasonable to conclude that an injury is not latent merely because the plaintiff suffered pain, when thereafter several physicians were unable to correctly diagnose his injury." Williams v. Dobberstein, 182 Neb. 862, 157 N.W.2d 776, 778 (1968). *See* Gluck Bros. v. Pollard, 221 Tenn. 383, 426 S.W.2d 763, 764 (1968).